ARMOUR & CO. et al. v. TEXAS & P. RY. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. May 5, 1919.)

No. 3360.

RAILROADS ⟨Key⟩54—REMOVAL OF TRACK—RIGHT TO EQUITABLE RELIEF—PUBLIC INTERESTS—LEGAL REMEDY.

Though meat-packing companies, acquiring valuable abutting property adapted to their business, have a contract or property right to prevent removal from a street of an industry track serving them, they cannot have relief by injunction against the city, the railroad company, and a trackage company, to restrain removal of the track to another street, when it appears that paramount public interests may be interfered with by granting relief, especially where there is no convincing showing of a lack of legal remedy for damages.

Appeal from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Suit against the Texas & Pacific Railway Company, wherein Pearl Wight was appointed receiver, and Armour & Co., a New Jersey corporation, and Armour & Co. of Texas, a Texas corporation, filed an intervening petition. From a decree dismissing the petition, the interveners appeal. Affirmed.

Sam B. Cantey, of Ft. Worth, Tex., and Francis Marion Etheridge and Joseph Manson McCormick, both of Dallas, Tex., for appellants.

Thomas J. Freeman and H. Generes Dufour, both of New Orleans, La., for appellees.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This is an appeal from a decree dismissing an intervening petition filed by the appellants, Armour & Co., a New Jersey corporation, and Armour & Co. of Texas, a Texas corporation, in a suit in which the receiver of the Texas & Pacific Railway Company (which will be referred to as the Railway Company) was appointed. The appellants sought an injunction to prevent the

Railway Company and its receiver from executing a contract to remove, and from removing, the tracks on Pacific avenue, in Dallas, Tex., including a switch or industry track serving the petitioners' plant.

The pleadings and evidence in the intervention proceedings disclosed the following facts:

For many years prior to 1912 the Railway Company had and used tracks on Pacific avenue, in the city of Dallas; its authority to do so being conferred by municipal ordinances. In July, 1912, the authorities of the city of Dallas passed an ordinance granting the Railway Company the right and privilege to construct a switch track on Pacific avenue; the location of that track being designated. That ordinance contained the following provisions:

"Sec. 2. That the right, privilege, and franchise hereby granted is granted subject to the city charter and ordinances of the city of Dallas and such future charters and ordinances as may hereafter be passed, and the city expressly reserves the right to at all times amend or alter the ordinance hereby granted.

"Sec. 3. That the right and privilege hereby granted is granted for a period of twenty years from the date of the acceptance of this ordinance, as herein provided for, and provided that in the event the said Railway Company shall be required to abandon, to elevate or to place in subways said main tracks on Pacific avenue, then in that event this franchise shall be subject thereto, and the said grantee shall, during said time, pay, on the second day of January, in each and every year, the sum of ten dollars per year, as a bonus for the right, privilege, and franchise hereby granted: Provided that ten dollars shall be paid for the year 1912.

"Sec. 4. That in accordance with the agreement heretofore made between the city of Dallas and Armour & Co., the owners of a certain lot located on the north side of Pacific avenue, and more particularly located on the northwest corner of Pacific avenue and Harwood street, and extending back to Live Oak street, which switch track is intended to serve said property, it is mutually understood and agreed that as a further consideration for this grant the grantee shall obtain from the said Armour & Co., or the said Armour & Co. shall dedicate to public use sixty-four square feet of land located at the southeast point of its said lot, where the same forms a corner of Harwood and Pacific avenue, and shall likewise dedicate to public use for street purposes thirty-five square feet off the northeast corner of its said lot, where the same forms the southwest corner of Harwood street and Live Oak street; it being the purpose of the said dedication to round the corners at such points and to dedicate such property for street purposes, and it being understood that it requires the amount of square feet herein stated to round off said corners, all of which more fully appears from map on file in the office of the city engineer of the city of Dallas. That the dedication of said property shall be made by the said Armour & Co., whose property is served by said switch, before the final acceptance of this ordinance by the grantee herein.

"That in the event the said Armour & Co. should fail or refuse to make said dedication, it is expressly understood between the parties that the city of Dallas may repeal and cancel the rights and privileges granted under this ordinance, by resolution or otherwise."

Armour & Co. made the dedication called for by the last-quoted provision. Before the adoption of the ordinance it was submitted to the attorney of Armour & Co., and was approved by him, and Armour & Co., conditionally contracted to buy the lot described in the ordinance, and after the adoption of the ordinance bought the lot and made the required dedication. Armour & Co.'s attorney had oral ne-

gotiations with the Railway Company's general attorney and with its general manager, and both those officials were advised that Armour & Co.'s purchase of the lot was conditioned upon the switch track being authorized and constructed, and the Railway Company's general manager assured an agent of Armour & Co. that if the city granted the franchise the Railway Company would put in the switch and maintain and operate it. Following Armour & Co.'s purchase of the lot and the adoption of the ordinance, it had built on the lot a steel reinforced concrete structure exclusively adapted to its business, which includes the refrigeration, smoking, drying, treatment, and curing of meats. The lot and the improvements thereon cost about $130,000. The business in which the property is used is an extensive and valuable one. If the switch track in question is removed, that property would not be available for use in the business for which it was acquired and for which it has been and is used. The business is carried on by Armour & Co. of Texas, which holds the property under a lease contract with Armour & Co., the substance of which, as stated in the summary of the evidence, is that the former pays the latter a net rental of 8 per cent. of the entire value of the property and plant, including taxes, charges, etc.

A result of the growth of Dallas since the Railway Company commenced to use Pacific avenue for its tracks is that there has been a great increase both of railway and other traffic on that street, and of other traffic along the streets crossing Pacific avenue in the locality of the switch track in question. Pacific avenue divides the principal residence section of the city from its principal retail and shopping district. The next street to it in the direction of the leading retail district was spoken of by one of the witnesses as "probably the most used thoroughfare of the city." Traffic in that locality has become greatly congested. The public interest and safety call for either the lowering or raising of these tracks, or the removal of them from Pacific avenue. The continuance of the tracks on the same grade as the street involves constant and increasing danger and inconvenience to many persons. There was evidence to support the conclusions that it is impracticable to lower the tracks on that street, because the lowering of them to the required depth would subject them to being flooded whenever Trinity river, to which the tracks go, is at high-water mark, and that the elevation of the tracks, besides being very expensive, could not be so effected that the industries located on that street could continue to be served by the Railway Company as they are served by the tracks on the street grade. For years past there has been public agitation against the continuance of the conditions on Pacific avenue resulting from the presence on it of the railway tracks.

In the circumstances above indicated the city of Dallas, the receiver of the Railway Company, and the Wholesale Trackage Company, a corporation, agreed upon the terms of a contract providing for the removal of the railway tracks from Pacific avenue and the discontinuance of the use of the street for railway purposes, except that a track serving one industry was to be continued for a specified time, and those required for the operation of certain passenger trains of another

railroad which had acquired a right to use the street were to be continued in use for that purpose, unless other arrangements could be made for those trains, and for the acquisition by the Railway Company of a route for its tracks through another and less congested part of the city, which included a new industrial district, industries located on which could be served by the Railway Company. By the terms of that contract a large part, if not most, of the expense involved in making the proposed change was to be borne by the Whole-sale Trackage Company; the money required for that purpose being contributed by owners of real estate expected to be benefited by the proposed change, some of the contributors being owners of lots on Pacific avenue, some of them being owners of nearby real estate which is separated from the heart of the city's retail business section by Pacific avenue, and the remainder being owners of real estate in the industrial district to be established and developed. After permits to make the proposed change had been obtained from the public authorities, the Railway Company's receiver filed in the cause, in which the petition of the appellants was filed, a petition praying that he be authorized by the court to execute the above-mentioned contract, which was the same one the execution of which the appellants sought to have enjoined. Following findings, supported by evidence adduced, that the consummation of the contract mentioned will be highly advantageous to the Railway Company and the citizens of Dallas, the court made a decree denying the injunction sought by the appellants, authorizing the receiver to enter into the proposed contract, and dismissing the petition of the appellants, without prejudice to any rights they may have hereafter to sue for such damage as may be occasioned them by the removal of the tracks in question.

The claim that the appellants have a contract or property right to the continued use of the switch track in question is based upon the circumstances that one of them was instrumental in procuring the adoption of the city ordinance granting the right to use the street for that purpose and dedicated a part of its lot to secure the granting of that franchise; that, before doing so, it was assured by the officials of the Railway Company that the latter would put in the switch and operate it if the city granted the required franchise; and that property was bought and improved in reliance on such assurance. It is not claimed that the switch track was paid for or is owned by the appellants, or either of them. If they have the right claimed, there is no corresponding obligation on either of them to continue to use the switch track. So far as appears, each of them retains the unconditional right to cease at any time to make use of that track or to carry on the business which is served by it. If there is a contract for the continued operation of that track, it is one which is not specifically enforceable against the appellants or either of them. The Railway Company's receiver was not a party to a contract on the subject, if there was one. To enjoin him from removing the switch track would amount to requiring specific performance by him of a contract to which he is not a party, and which is not specifically enforceable against the appellants at his instance. There is no mutuality of either

obligation 'or remedy. The reciprocal feature of the duty of specific performance which is enforceable in courts of equity is not to be lost sight of. It is a recognized ground for refusing redress by specific performance that it could not successfully be sought against the party applying for it. Where there is such a lack of mutuality, it is an additional impediment in the way of granting the exceptional equitable remedy of specific performance that the party seeking it fails to show that he has not a full, complete and adequate remedy at law for the damage, loss, or injury suffered in consequence of the threatened breach of duty sought to be specifically enforced. To say the least, there was no convincing showing of a lack of an available and adequate legal remedy.

The petition of the appellants contains general statements to the effect that irreparable loss and damage will be occasioned to them by the threatened removal and abandonment of tracks on Pacific avenue serving their plant. The pleadings and evidence do not disclose facts requiring the conclusion that appellants cannot obtain compensation at law to which they may become entitled for the loss or damage caused by the removal of the tracks. If the appellants have a cause of action against any one based upon a discontinuance of the tracks, it is against the city of Dallas and the Texas & Pacific Railway Company, one or both. The insolvency of neither of those parties is shown. It was not shown that the proposed removal was to be so effected as necessarily to cause the interruption or cessation of the business of the appellants in Dallas. While it is shown that the value of the structure in which that business is conducted would be impaired by removal of the track, it is not satisfactorily shown that the value of the lot with the structure on it would be less after the railway track shall have been removed from the street than it was before. There was evidence tending to prove that the value of property on Pacific avenue would be enhanced by the removal of the tracks. It is not shown that the business of the appellants cannot as well and profitably be carried on in the proposed new industrial district, or in another part of Dallas, where railroad facilities would be obtainable. If the record be regarded as showing that any one is liable to the appellants for a loss resulting to them from such a change, it cannot be regarded as convincingly showing that they are without a full, complete, and adequate legal remedy for the enforcement of that liability.

It is not necessary to decide whether the foregoing considerations by themselves are enough to justify the refusal to grant an injunction having the effect of preventing the discontinuance of the use of railroad tracks on Pacific avenue, so far as concerns the serving of the plant of the appellants. The continuance of the conditions resulting from the use of that street by the Railway Company is not only a hardship on that company, subjecting it to burdens and liabilities which may be escaped or materially lessened by a practicable change of location, an advantageous opportunity to make which is offered, but is against the public interest. The street has become such a one that the continued use of it by the Railway Company is not compatible

with the safety and convenience of a populous community. If the appellants have the contract or property right claimed as the basis of the relief sought, it does not follow that they can obtain that relief when it appears that paramount interests will, or even may, be interfered with by granting it. Beasley v. Texas & Pacific Ry. Co., 191 U. S. 492, 24 Sup. Ct. 164, 48 L. Ed. 274; Texas & Pacific Ry. Co. v. City of Marshall, 136 U. S. 104, 10 Sup. Ct. 846, 34 L. Ed. 385; Northern Pacific R. Co. v. Territory of Washington, 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092. In the opinion in the last-cited case it was said:

"The court will never order a railroad station to be built or maintained contrary to the public interest."

Change in local conditions may make it against the public interest for such railroad operations as the Railway Company is engaged in to be carried on in a street in the heart of a city along and across which there is considerable and increasing traffic of other kinds. Certainly a court is justified in refusing an injunction sought as a means of enforcing the continued use for steam railroad purposes of a much-traveled city thoroughfare, especially where it is not made plain that the party seeking such relief cannot in an action at law recover such compensation as it may become entitled to for the loss or damage caused to it by the discontinuance of such use.

The conclusion is that the court did not err in refusing the injunction sought and in dismissing the petition of the appellants without prejudice to their right to enforce whatever liability to them may be incurred by the proposed removal of the track in question.

The decree to that effect is affirmed.