RIVERA, PLAINTIFF AND APPELLANT, *v.* PORTO RICO DRUG CO., DEFENDANT AND APPELLEE.

## APPEAL from the District Court of Ponce in an Action for Damages.

No. 2594.—Decided November 26, 1923.

DAMAGES—NEGLIGENCE—DANGEROUS MACHINERY—CHILDREN—CONTRIBUTORY NEGLIGENCE—LICENSEE—TRESPASSER — NOTICE — INDUCEMENT.— The defendant owned an establishment in which it manufactured ice cream and beverages, using in their preparation an electric motor to operate the ice crusher and freezers. The mother of the minor plaintiff was employed by the defendant as charwoman of the establishment, and with the tacit consent of the defendant she was assisted by her son in the establishment. On a certain occasion the boy went near the electric motor which entangled his blouse and seriously injured him. On several occasions the plaintiff, through an assistant of the man in charge of the freezers, had permitted, if not induced, the boy to do light work, such as washing bottles, and paid him with ice cream or other confections whenever the finished product for any reason was not fit for sale. The evidence for the defense indicates an attitude of reluctant acquiescence in the presence of the plaintiff on the premises and shows also that the plaintiff was accustomed to search for and take any residue which remained in the containers after they were supposed to be empty, and that he and other boys had repeatedly been put out of the place where the accident occurred. *Held:* That whether the plaintiff be considered as a guest, as a licensee, or as a trespasser in its technical sense, the place where these confections were made became for him practically a trap and the defendant was put on notice and had every reason to anticipate the presence of the plaintiff at any time.

ID.—ID.—ID.—ID.—COVER OF MACHINERY—NEGLIGENCE OF EMPLOYEES.—The accident occurred some three years prior to the date of the trial and the inspection made of the premises by the trial judge. If the case or cover that he found, which was said to be so arranged that it could be opened or closed at the will of the operator, was there at the time of the accident, it must have been left open by the employees of the defendant when the machinery was put in motion, or the accident could not have occurred. *Held:* That defendant's employees were guilty of negligence in starting the machinery without closing the cover and without ascertaining whether or not the plaintiff was near the exposed cog-wheels where they had good reason to suppose that he would be.

ID.—ID.—ID.—ID.—ID.— CONDUCT OF CHILDREN— NEGLIGENCE OF PARENTS. — Al-
though the conclusion of the trial court with regard to the contributory negli-
gence might be left undisturbed if the plaintiff had been an adult, there is
no satisfactory ground for such a conclusion in the light of the rule referred
to as the standard for the conduct of children, and the doctrine that imputes
to children the negligence of the parents in an action brought for the benefit
of the child does not recommend itself to the spirit of justice of the Supreme
Court.

The facts are stated in the opinion.

Messrs. T. Castillo and F. B. Fornaris for the appellant.

Mr. J. Tous Soto for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Felícita Rivera brought suit on behalf of her infant son
Rafael Rivera for damages and alleged among other things
that defendant owned and maintained at a certain corner of
Plaza Degetau, in the city of Ponce, an establishment open
to the public, to wit, a drug store and other lines of business
including the manufacture and sale of ices and refreshments,
in the making of which defendant used an electric motor
operating machinery for the crushing of ice and the turning
of freezers, the said motor being located within the said
establishment and in a place contiguous to that where the
said refreshments were served; that the mother was em-
ployed by defendant as janitress of the said establishment
and in consequence thereof and with the tacit consent of
defendant, utilized the services of her son Rafael within the
said establishment; that on a certain occasion and through
the exclusive fault and negligence of defendant or its agents,
and upon coming near the electric motor above mentioned,
the child, without fault or negligence on his part, was caught
by the blouse that he wore and seriously injured.

The complaint also charges that the defendant made use
of the services of the child, sending him on errands to the
post office, to the refreshment counter after ices for the
employees upstairs, to the place where the motor was
situated for sawdust, etc., and that at the time of the ac-
cident plaintiff was so employed. But inasmuch as the testi-

mony with reference to these matters is conflicting and the court below found that plaintiff was not an employee of defendant, we may for the purposes of this opinion put this aspect of the case out of view.

The fifth averment reads as follows:

"That said accident and all the consequences thereof were due solely and exclusively to the fault, negligence and carelessness of the defendant, The Porto Rico Drug Company, its agents employees or subordinates, such fault, negligence and carelessness consisting, among other things:

"(a) In that said electric motor was not protected, was without any safeguards, fence or enclosure or any contrivance that would prevent injury to any person passing close to where the said motor was installed.

"(b) In that said motor was located at the defendant's establishment in a place of reduced size and greatly liable to injure or entrap anyone who might be passing by.

"(c) That notwithstanding the said conditions affecting the motor in question, nobody was assigned to watch thereover and prevent persons from approaching too close thereto, nor was there any sign or warning of the danger that the motor might there cause."

Defendant's theory of the accident, as disclosed by the answer, may be found in the following paragraph:

"We admit that the accident mentioned in the fourth averment was due exclusively to the fault of Rafael Rivera and Felícita Rivera, the fault of the latter consisting in allowing said Rafael Rivera to enter the place used for making ices against the express prohibition of the defendant corporation, and that of the former in entering the said spot, where he and all other persons not employees of the corporation were forbidden to enter, and in attempting to snatch a piece of ice from the freezer while in operation without taking any precautions, approaching too close to the operating machinery and allowing himself to be caught therein."

The following extract is from the statement filed by the trial judge:

"From the oral evidence and the ocular inspection, the court makes the following findings of fact:

"1. That under regular conditions, that is, when operating the

freezers, the size of the latter effectively prevents the body of a person approaching the same from coming into contact with the gearing.

"2. That even without the freezers the gearing cannot come into contact with the body of a person of plaintiff's size unless he gets up on the platform where they are installed.

"3. That there is a sign on the door leading to the retail store reading 'Private.'

"4. That there is sufficient space to pass through the ice department without running any risk of being caught in the machinery.

"5. That the pinions revolve at moderate speed.

"6. That the gearing is supplied with an enclosing device preventing all contact therewith at the volition of the operators.

"7. That only operators have any need to go through the machinery department.

"8. That the plaintiff was in no respect an employee of the defendant.

"9. That he had neither right nor business in the department destined to the manufacture of ices. His admittance thereto had been expressly prohibited by the employees of the defendant and he was a trespasser.

"And whereas in the case of Morales v. Central Machete, 9 P. R. R. 117, it is stated:

" 'Every person who without any right whatever enters upon the property or into the establishment of another is a trespasser and does so at his own risk, and if he should sustain any injuries from the working machinery he will have no right of action for damages unless such injuries are inflicted voluntarily and intentionally.'

"Wherefore the court is of the opinon that the defendant is not guilty of any negligence and that the accident was caused by the sole and exclusive negligence of the plaintiff."

The brief for appellee closes with the following paragraphs:

"The child Rafael Rivera was a *trespasser;* at most, a licensee, if the pleading of the complaint be accepted. 20 R. C. L., sec. 53, p. 57.

"Fact in the present case, that the injured person was a child.

"The danger was obvious even in the case of a child. 20 R. C. L., sec. 82, p. 93.

"The negligence of the mother is chargeable to him. 20 R. C. L. sec. 128, p. 153.

"The same rule is in force in California. 52 Cal. 602; 66 Cal. 230; 64 Cal. 463; 118 Cal. 62.

"The child, admitting that he was an employee, acted contrary to express orders. He cannot therefore recover. 18 R. C. L. 152.

"In any event the accident was not due to defective machinery or to the negligence of the employer in failing to afford protection to the employee's, but to the negligence of other employees. Fellow-servant rule. 18 R. C. L. 712; sec. 193.

"Attraction in case of child by reason of place.

"It may be said that Rafael was not aware of the danger and was attracted to the spot by the apparent harmlessness of the apparatus. Is the turntable theory otherwise applicable to the case? Rafael's repeated statements that the machinery sounded like a merry-go-round seemingly indicates that an attempt has been made to conduct the case along this line, but it must be borne in mind:

"(1) That Rafael states that he went to look for sawdust and that he was passing by the place with the sawdust when the accident occurred.

"(2) That he stopped to watch the work of the operators when the apparatus was not running and could not therefore produce the noise of a machine.

"(3) That his testimony showed that he knew perfectly well that this was the place for crushing ice and making ices and that it was not and could not be a merry-go-round.

"In sypnosis: No relation has been established between employer and employee: the negligence of the defendant has not been shown: the negligence of the child and his mother has been proved."

In *Morales v. Central Machete* the plaintiff was an adult who brought an action under the Employer's Liability Act of March 1, 1908, and therefore, of course, in order to recover was required to show, among other things, that he was an employee of the defendant. In these circumstances this court said:

"The evidence taken all together fails to show satisfactorily that the plaintiff was in the employ of the defendant. It rather shows that he was an intruder or a trespasser on the premises of the

Central Machete, and that his presence there was unknown to the authorities of the company."

Moreover, in the case at bar as suggested by the extract from the brief for appellee, *supra,* the machinery was not in motion when the child approached the same, but plaintiff was caught when the motor was started by defendant's employees; and, even in the case of an adult trespasser, there is an important distinction to be drawn between a mere passive omission or failure to exercise ordinary care and some active positive step as the proximate cause of the injury.

Thus in *Rome Furnace Co.* v. *Patterson,* 120 Ga. 521, the court after pointing out that Patterson was a trespasser says:

"It is evident, therefore, that the defendant owed the plaintiff no duty, so far as the condition of the premises was concerned, when he entered. He took whatever risk there was in going into the house, both as to its condition and the manner in which the defendant's work was being carried on therein. Still, we think that, even as a trespasser, he would have the right to recover for any injuries sustained by him in consequence of the defendant having negligently and recklessly set in motion any destructive agency or force the natural tendency of which would be to imperil his life, if at the time of such negligent and reckless act the defendant knew or ought to have known, that he was where he was likely to be injured thereby."

In *Felton* v. *Aubrey,* 74 Fed. 350, the Circuit Court of Appeals, 6th Circuit, speaking through Judge Lurton, said:

"It seems to us that many of the American cases which we have cited fail to draw the proper distinction between the liability of an owner of premises to persons who sustain injuries as a result of the mere condition of the premises and those who come to harm by reason of subsequent conduct of the licensor, inconsistent with the safety of persons permitted to go upon his premises, and whom he was bound to anticipate might avail themselves of his license. This distinction seems to be sharply emphasized in the case of

Corby v. Hill, and is a distinction which should not be overlooked. If there be any substantial difference between the legal consequence of permitting another to use one's premises and inviting or inducing such use, the distinction lies in the difference between active and the merely passive conduct of such a proprietor. It may be entirely consistent with sound morals and proper regard for the rights of others that the owner of premises should not be held liable to one who goes upon another's premises for his own uses, and sustains some injury by reason of the unfitness of the premises for such uses, not subsequently brought about by the active interference of the owner. If such person goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which pertain to the situation. But, on the other hand, if with knowledge that such person will avail himself of the license, the owner actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger to be encountered."

Thomas Aubrey, plaintiff in the case last mentioned, was a boy nine years old, but there is nothing in the opinion suggestive of any intention to distinguish between adults and infants of tender years in applying the doctrine, and in *Ellsworth* v. *Metheney,* 104 Fed. 119, the same court, in an opinion by Judge Day, after pointing out that Metheney "was not engaged in the business of his employer at the time of the injury, but came to his death during the noon hour while returning from a visit undertaken upon his own volition outside the part of the mine in which he was employed," held that the court below erred "in treating the case as one turning upon the duty owing by the employer to the employee injured in the course of his duty." But the court proceeded to say:

"Admitting that, while not engaged in the course of his employment, Metheney was not entitled to the protection of an employee, he was, nevertheless, a licensee using the entry with the implied consent of the employer."

Then, after quoting with approval from the opinion by Judge Lurton in the *Felton Case,* the court adds the following:

"Applying the doctrine herein stated to the facts developed in the present case, we do not perceive why the owner of the mine who actually changes the situation of previous safety by introducing an electric wire insufficiently insultated to prevent injury to those who may come in contact therewith, in a place where he knows or has the means of knowing that the workmen are likely to congregate, is not equally liable with the owner of premises who may 'actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee.' In the case at bar, as well as in the one put by Judge Lurton, we are of the opinion that sound morals and just treatment demand that the licensee shall have notice of the new danger which he is likely to encounter in using the premises."

In *Ziehm* v. *Vale,* 120 N. E. 702, the Supreme Court of Ohio distinguishes a previous case and justifies the later decision in this wise:

"Under the facts disclosed in the Harvey Case, the rule there stated in the syllabus applies to the condition of the premises, its construction or maintenance, and does not embrace a situation where a statical condition of the premises is made perilous by the active, negligent operation thereof by the owner."

See also *Brinilson* v. *Chicago & N. W. R. Co.,* 32 L. R. A. (N. S.) 359, and other cases cited in note to *O'Brien* v. *Union Freight Co.,* 36 L. R. A. (N. S.) 492.

In the instant case plaintiff was nine years of age at the time of the injury and, for the purposes of this opinion, it may be conceded, without holding, that a child of that age may be technically a trespasser, although the courts are not unanimous upon this point, and there is some very respectable authority for the contrary view. See *Lynchburg Tel. Co.* v. *Bokker,* 50 S. E. 148; *Dublin Cotton Oil Co.* v. *Jarrard,* 97 Texas, 289, 42 S. W. 959, and other cases cited

in the note to *Walsh* v. *Pittsburgh Ry. Co.,* 32 L. R. A. (N. S.) 560.

Conceding further, for the sake of argument only, that plaintiff herein was technically, as found by the trial judge, a trespasser, yet we cannot concur in the application sought to be made of the harsh doctrine announced in *Morales* v. *Central Machete* and invoked by the court below.

Judge Thompson in his Commentaries on the Law of Negligence, Vol. 1, at page 938, after discussing the general rule which exonerates from liability the owners and occupiers of premises for injury to children coming thereon, says:

"One doctrine under this head is that if a child trespasses upon the premises of the defendant, and is injured in consequence of something that befalls him while so trespassing, he can not recover damages, unless the injury was *wantonly inflicted,* or was due to the recklessly careless conduct of the defendant. This cruel and wicked doctrine, unworthy of civilized jurisprudence, puts *property* above *humanity,* leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any measure of duty towards him which they would not owe under the same circumstances towards an adult. In one of these cases the court was not ashamed to say: 'The circumstance that the trespasser in this instance was a boy ten years of age cannot affect the application of the rule. The defendants owed him no greater duty than if he had been an adult. They are not subject to the obligation to take precautions against any class of persons who may walk on and along their tracks.' In another case, where a boy seven years old was killed while attempting to ride upon a hoisting machine, the judge who wrote the opinion of the court, quoting from a previous decision of the court, was not ashamed to say: 'The boy was in a place where he had no right to be and where he was not entitled to any protection from the defendants against his own reckless trespass.' So severely has this doctrine been applied, that it has been held that a child can not recover damages for an injury which was the direct con-

sequence of its own trespass, although the trespass was committed under the control or coercion of its parent or guardian. Another court, with some humanity, has qualified that doctrine by saying that, except when a child is seen in time so that the injury to it may be averted, persons who are lawfully using, or carrying on business on their own premises are not liable for injuries to children, unless, under the same circumstances, they would have been liable to adults who were equally free from fault.

This hard doctrine is so applied as to allow a proprietor to leave upon his premises, exposed to children of the neighborhood, dangerous objects of such a character as to attract their childish instincts, and to escape liability if a child attracted by such object is killed or injured by it,—on the ground that the child is a trespasser, and that the leaving of dangerous objects so exposed as to tempt him to his death is not wanton or reckless negligence. Under this draconic doctrine the youth of a wrong-doer and trespasser, although he acted as reasonably as might be expected of him, if his conduct contributes to the injury which he receives, will not prevent his contributory fault from constituting a defense in favor of a person or corporation whose negligence also contributed to the injury. Applying this doctrine, it was held that a street railway company is not liable for an injury caused by an *unfastened brake*, to a boy ten years old, who, when injured was playing with other children upon the cars left standing uncared for several days on a public street in a city. One court has gone even further, and, speaking through a judge who afterwards laid aside his judicial robes to become a receiver of an insolvent railroad company, declared in unqualified language, in a suit brought by a father as next friend of his child seven years of age, the infamous proposition that where a child is a trespasser upon the train of a railroad company, whether with or without the consent of its father, 'the defendant company owes no duty and is not liable for injuring it.' Moreover, it seems that the law is so tender of the rights of street contractors as to hold that they are under no duty—such is the form of judicial expression—to employ men to keep children from playing on moving dump cars. Another court, with a clearer perception of justice, holds that a railroad company is bound to use reasonable care to anticipate and prevent an injury to a child of such tender years as to have little or no discretion, though the child be a trespasser. Another court, which is usually conservative of the rights of property, dealing also with reference to a railroad com-

pany, reasons that, while tender age can not raise a duty where none otherwise existed, yet *where a duty exists*, the degree of care required toward infants may be different from that required toward adults. But the helplessness of tender age *can* and *ought* to raise a duty where none would exist with reference to adults. Accordingly, it has been held that the conductor of a train upon which a child seven years old has become an intruder, is bound to use greater care in dealing with that child than he is required to exercise with older persons. It is some relief to know that this rule against infantile trespassers does not extend to pits left unguarded in the *public highway*. There they are not intruders; but the city owes them the duty of knowing that they will resort to such a place, and of protecting them against falling into it.''

But, it is fair to add, the same author later concedes at page 962 of the same volume:

''If we do not attend so much to what the judges *say* as to what they in fact *hold*, we shall find that, in some of the cases where their expressions seem odious to justice, the injury which befell the trespassing child was rightfully ascribed—not to his negligence where he was so young as to be incapable of negligence, nor to the negligence of his parent, guardian or custodian for which he ought not to answer, but to *accident* or *misfortune* attributable to his infantile inexperience and helplessness. Thus, in a case where the opinion contains expressions which are unworthy of a court of justice, it appeared that a boy six or seven years old, got upon a ball attached to a chain used as a hoisting apparatus for a mill, while it was in motion, for the express purpose of riding upon it, although warned by a companion not to do it, and rode to the height of three stories, when, becoming frightened, he lost his hold, fell to the ground and was killed. Here it does not seem to have been an unjust conclusion that the proximate cause of the injury which befell the boy was his own childish fault, and not any negligence on the part of those in charge of the machine; but we can not possibly agree to the statement of doctrine contained in the opinion that they owed him no more duty than if he had been an adult, and no duty at all, because he was a trespasser.''

Perhaps the judge would have found further comfort in *Walsh* v. *Pittsburgh Ry. Co., supra,* where the Pennslyvania Supreme Court upon the authority of an earlier case holds

that ''even trespassers are entitled to human consideration'' and says that:

''If the man who started the motor knew at that time that the plaintiff was standing between the rails, close to the frayed cable, which would touch her dress when in motion, and from his knowledge of the circumstances was conscious that she would be exposed to danger if the machinery was put in motion, a duty of care arose, as it would in the case of an engineer who sees a child on the track in front of his engine.''

And in White's Supplement at page 170 we find the following somewhat more optimistic statement:

''The better rule—and the one most strongly supported by authority—does not regard a child of tender years, lured upon the premises by reason of the existence thereon of something that appeals to his childish curiosity and instincts, as a trespasser. The law regards the existence of such an object or condition as an implied invitation to the child to enter the premises. 'What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years.' Under this rule a person who maintains on his premises a dangerous instrumentality, though not in itself attractive, but placed so near an attractive situation on the premises as to form with it a dangerous condition, may be liable for injuries to a child resulting therefrom, notwithstanding the attractive situation is not in itself dangerous. Whether the premises in a given case are sufficiently attractive to entice a child into danger and suggest to the owner the probability of accident, are questions of fact for the determination of the jury.''

In *Heller* v. *N. Y. New Haven & Hartford R. R. Co.*, 265 Federal, 192, the third paragraph of the syllabus reads as follows:

''A railroad company, which maintained an electric feed wire alongside its track, 29 inches from an abutment, where it passed under a highway bridge 22 feet above the track, *held* not chargeable with negligence, which rendered it liable for the death of a boy 10 years old, who climbed on the abutment, and through an opening in the wire screen above it, and touched the wire with a tin can; there being no reasonable ground to anticipate such action.''

But at page 198 the Circuit Court says:

"If the defendant ought reasonably to have anticipated that children would be likely to resort to this particular place to play, and, if they did, that they would be likely to be injured, it was guilty of negligence in maintaining the place in its exposed state. It is sufficient to authorize a recovery in cases of this nature if it appears that cautionary measures of a reasonable character would have prevented the injury complained of, and that such measures were not taken by defendant."

And in *Louisville and, N. R. Co.* v. *Steele,* L. R. A. 1918 D, page 317, a Kentucky court of appeals held, to quote the syllabus:

"A railroad company whose conductor has for a long time encouraged boys to catch rides on a train of which he was in charge is bound to anticipate that they will do so, and must exercise ordinary care to look out for and protect them from injury."

In *Ziehm* v. *Vale, supra,* defendant was the owner and driver of an automobile. The opinion reads in part as follows:

"In the present case the feature of invitation or license is not involved, for it is conceded that the child was on the car against the express command of the defendant. As disclosed by the first and second special request, the defendant conceived that he was not liable unless he actually knew that the child was on the running board of the car at the time he started his car, or while he was running the same forward. The second request was predicated upon the principle claimed that after driving the child away from the car there devolved no further duty upon the defendant, and that no obligation rested upon him to see that the child remained away. . . . .

"But when he concedes that he drove the child, first from the right running board, and again from the left running board, of his car, would not these and other attending circumstances apprise the defendant that a child of that age, acting under childish instinct, and unaware of its peril, would make still another attempt to board the car? This actually did occur. The trial court was therefore

not in error when it charged the jury upon the subject of the defendant using ordinary care under the facts disclosed."

From a note on the so-called attractive nuisance doctrine in 19 L. R. A. (N. S.) beginning at page 1130, we take the following paragraphs:

"The owners of grounds may be liable for injuries to trespassing children where, on account of the peculiar nature and exposed position of the dangerous defect or object, the owner should reasonably have anticipated such injury; and so, where the declaration alleged that a river drawbridge, located in a populous district of a city, was very attractive and enticing to children, and dangerous for them to be about while being opened and closed, and that it therefore became the duty of the defendant, while moving and turning the bridge, to keep a reasonable lookout and watch over its approaches, and to use reasonable precautions to prevent children from approaching, and from being thereby injured, it was held that the question should be left to the jury whether the swinging bridge was a dangerous structure, in which the defendant should reasonably have anticipated that a child would catch its foot while attempting to jump upon it, and whether the servants of the defendant in charge of the bridge used ordinary and reasonable care and precautions to prevent the happening of the injury." *Coppner* v. *Pennsylvania Co.*, 12 Ill. App. 600.

"The owner of unprotected revolving cogwheels, located in an open space, 20 feet from a street, is liable for injury to a three-year-old child by the machinery, and the fact that the child was a trespasser does not matter. Whirley v. Whiteman, 1 Head, 610. The court said that, in playing about the cogwheels, the child was but indulging the natural instincts of a child.

"In Hydraulic Works v. Orr, 83 Pa. 332, a heavy platform so built that it could be raised or lowered across a private cartway in the heart of a city, close to a public highway, access to the premises being frequently left open, was held to be a dangerous trap when it was raised and unfastened and made to lean against a building at such an angle that a slight jar or pull would cause it to fall, and the owner of the premises was therefore liable for the death of a six-year-old boy who, with others, strayed into the passageway through a gate that had been left open, and was playing there when the platform fell upon him. The decision rests on the ground that the owner of the premises might reasonably have

apprehended such an accident. In this case the trial court, in response to the request to charge, stated that a child could not be treated as a trespasser or wrongdoer.

"A good cause of action for injury to a child was held stated in a declaration which alleged that the defendant operated an unguarded planing mill, situated in an open lot where children were allowed, with the knowledge and consent of the defendant, to congregate and play, the place being adjacent to certain streets and highways in the midst of a thickly settled and populous district of a city, and supplied with dangerous machinery, including revolving interlocking cogwheels of such a character as to be attractive to children, and to appeal to their childish curiosity, to the defendant's knowledge, and which alleged that a nine-year-old boy drawn to such dangerous machinery by childish curiosity, was injured thereby while exercising due care and caution for his own safety." *Jensen* v. *Whetherell*, 79 Ill. App. 33.

"In Dublin Cotton Oil Co. v. Jarrard (Tex. Civ. App.) 40 S. W. 531, a girl caught her foot in open conveying machinery in a cotton-seed mill and was hurt. It was urged that if she was there merely with the consent and knowledge of the defendant, the only duty owed to her was to refrain from doing acts knowing the consequences of which would be injurious to her; and that if she was there not upon express or implied invitation, nor by permission or consent, then she was an intruder, and could recover nothing for injuries not wilfully and knowingly inflicted. But the court said that while this proposition might be urged against an adult with experience and judgment, it was not the law governing our duties to little children, who, like the bees and the butterflies, wandered everywhere and into every place left open, as their childish instincts and impulses led them. They were not trespassers or intruders within the meaning of the law until they were old enough and intelligent enough to know and appreciate the right of the proprietor to exclude them from his premises by a simple command. They understood that they were required to keep out only when they could not get in. They paused not to read the signs of warning or to inquire if they were welcome.

"A corporation maintaining over a body of water a revolving shaft with a coupling containing a projecting set screw, the shaft being supported by a timber framework which, together with the machinery and surroundings, is attractive to children, who are in the habit of resorting thereto for the purpose of amusement, men and

boys being accustomed to climb about on the timbers for the purpose of fishing, to the knowledge of the company, was held liable for the death of a fourteen-year-old boy who, in climbing upon the structure was caught by the set screw and wound around the shaft. Biggs v. Consolidated Barb-Wire Co., 60 Kan. 223, 44 L. R. A. 655, 56 Pac. 4. To the same effect is Biggs v. Consolidated Barb-Wire Co., 62 Kan. 492, 63 Pac. 740.

"Whether, in any given case, there has been negligence on the part of the owner of property in maintaining dangerous machinery upon it, is a question of fact, dependent upon the situation of the property, and the attendant circumstances; because upon such facts will depend the degree of care necessary to guard others against injury therefrom." *Barrett* v. *Southern P. Co.*, 91 Cal. 296, 25 Am. St. Rep. 186, 27 Pac. 666.

And in another note contained in L. R. A. 1917 F, at page 67, we find the following:

"On the question of contributory negligence of children between the ages of nine and thirteen, inclusive, the principal conflict in the cases is in respect to the question of presumption of capacity or incapacity. As already shown, such a presumption is held in some states to obtain until the child reaches the age of fourteen. Thus, the doctrine of prima facie presumption of incapacity on the part of a child to contribute negligently to an injury has been recognized in Pennsylvania in cases of injury to children of nine, eleven, twelve and thirteen years of age. And the same doctrine has been recognized in Mississippi in the case of injury to a child ten or twelve years old. On this point, in an action for the death of a thirteen-year-old boy who was killed while employed in the defendant's mine, the court in an Alabama case, in holding that the question of contributory negligence had been properly left to the jury, said: 'It may be true that contributory negligence may under some conditions be imputed to an infant under fourteen years of age as a matter of law, as where the evidence of his case and prudence and his capacity to exercise judgment and discretion is not in conflict, and different inferences cannot be drawn therefrom. The fact however, that the infant was shown to be "bright, smart, and industrious", without more, is not sufficient to overcome the presumption of that want of discretion which his age prima facie implies, for an infant may be all this, and yet be so wanting in judgment and discretion as to make him rash and imprudent.'

"In most jurisdictions, however, the doctrine of prima facie presumption that children of from nine to thirteen years of age are incapable of contributory negligence does not appear to be applied, but such children are required to exercise care proportionate to capacity, discretion, knowledge, and experience, and if there is any presumption in the matter it is that they are capable of exercising some degree of care."

The standard by which the conduct of a child should be measured in determining the question of contributory negligence is set forth in *Rivera* v. *Successors of López Villamil*, 29 P. R. R., 257, and need not be restated here.

"The doctrine of Hartfield v. Roper, which imputes negligence of parents or custodians to children, still obtains in full force in New York, the State of its adoption, and is followed in North Carolina. The doctrine originally accepted in Indiana, is now rejected by the courts of that State.

"The doctrine of imputed negligence in this connection is denied in recent decisions in Connecticut, Illinois, Indiana, Iowa, Kentucky, Minnesota, New Hampshire, New Jersey, Ohio, Oregon, Tennessee, Texas and Vermont. In Connecticut it is held that the question of the negligence of the parents of a child in allowing it to play on the streets is immaterial, where it does not appear that the parents are in a position to be benefited by a participation in the distribution of the amount sought to be recovered in an action by the administrator for the wrongful death of a child." White's Supplement to Thompson's Commentaries on the Law of Negligence, sec. 292 and 293.

See also *Sandel* v. *State,* 13 Am. Law Rep. 1268, at page 1271, where a distinction is drawn in this regard between an action brought for the benefit of the infant and one for the injury or death of an infant brought for the benefit of the parents.

In the instant case on the day of the accident one of defendant's employees, in breaking a block of ice, dropped a sledge hammer, which fell through the funnel or hopper of the ice-crusher into the machinery beneath. Shortly thereafter two other employees were repairing the damage and

plaintiff, whether observed or not, was a close observer. Upon finishing the job one of the employees last mentioned put the machinery in motion, and the injury to plaintiff followed forthwith.

If, aside from the repair work, the exposed cogwheels and the proximity thereof to the soda-fountain and to the street, the merry-go-round feature of the case were the only basis for the theory of an appeal to childish instinct, then we might be disposed to consider more seriously, even though not inclined to concede, the contention of counsel for appellee that no very satisfactory ground for an application of the turntable doctrine has been established.

But there is another and much more serious aspect. It may be true that the department managers and even their immediate subordinates did not utilize the services of plaintiff nor expressly authorize or consent to the use of such services by other employees. Yet there is testimony tending to show, and which we are persuaded all things considered does show, that plaintiff on several occasions at least was permitted, if not induced, by an assistant to the man in charge of the freezers, to wash bottles or other containers used in the making of the cold confections, and that as a reward for such services he was promised and received ice cream, or other frozen delicacies whenever the finished product was impregnated with salt or other admixture rendering it unfit for sale. Even the testimony for the defense, which does not concede so much, not only indicates an attitude of reluctant tolerance and acquiescence in the presence of plaintiff about the premises but also discloses that plaintiff was alert to find and appropriate any residue remaining in the containers when they were supposed to have been emptied, and that both he and other children had been repeatedly removed from the place where the accident occurred. Thus, from either point of view, and whether plaintiff be regarded as an invitee, a licensee or a technical trespasser,

the place where these sweetmeats were made became for him, and to all practical intents and purposes, a baited trap; and defendant was put upon notice and had every reason to anticipate the presence of plaintiff at any time.

The accident occurred some three years prior to the date of the trial and view of the premises by the trial judge. If the case or covering found by him, and said to be so constructed as to open or close at the will of the operator, was there at the time of the accident, then the same must have been left open by the employees of defendant when the machinery was put in motion. Otherwise the accident could not have occurred. That the servants of defendant were guilty of negligence in starting the machinery without closing the open casing, and without looking to see whether or not plaintiff was in close proximity to the exposed cogwheels, where they had excellent reasons to expect he would be found, seems too obvious for serious discussion.

Upon the question of contributory negligence it will suffice to say that, while the finding in this regard might be permitted to stand if plaintiff were an adult, there is no satisfactory ground upon which to base such a conclusion, in the light of the rule above referred to as a standard for measuring the conduct of children; and the doctrine which imputes to children the negligence of parents, in an action brought for the benefit of the child, does not commend itself to our sense of justice.

The judgment appealed from must be

*Reversed.*

Chief Justice Del Toro and Justice Franco Soto concurred.

Justices Wolf and Aldrey dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF.

This was a case in which the District Court of Ponce made complete findings of fact with respect to the issues

submitted to it.   If the pleadings be examined it will be seen that no issue of a supposed attractive nuisance *vel non* was raised in the complaint or in the answer.   Similarly, no issue was presented of the duty of an owner of premises to take ordinary care to protect a trespasser or a licensee, adult or child, once the owner knew, or had reason to know, that such a person might be expected on the premises at any time.   Nor is this a case, as held or suggested in the opinion of *People* v. *Heirs of Valdés,* 31 P. R. R. 213, where the appellate court might consider the pleadings to be amended to conform to the proof, or the variance inconsiderable.   I find nothing in the transcript of the record to show even remotely that any controversy was waged over any alleged attractive nuisance or over any supervening duty to · protect against trespassers or licensees whose presence might be expected. Some of these matters I shall discuss further on, but at present I am directing myself to the state of the issues and the findings with respect thereto.   The theory of the complaint, to which no amendment was offered, was that the complainant was an employee with duties that took him to a spot where there was dangerous machinery liable to injure anyone who went by and which the defendant negligently failed to guard.

The findings of the court show that the complainant was not an employee; that he had no duties which took him to the alleged dangerous machinery; that he was forbidden to go there; that the machinery was in a part of the shop where the public had no business to go; that the machinery was so protected that there was no likelihood of anybody's being injured in going by, and that entrance to this part of the shop was prohibited.   The majority opinion suggested that the examination of the premises made by the judge took place three years after the accident, but the said majority opinion does not find that the court was mistaken.   The evidence supports the findings of the court below, not only in this regard but in all others.   In other words, there was evi-

dence tending to show every fact found by the court. The court below heard the witnesses and the ordinary presumption prevails that the findings are correct until the contrary is distinctly pointed out. I take it that the majority opinion does not really consider that the findings were not justified by the proof, but in a way makes other findings based on matters of evidence not perhaps specifically touched upon by the court below.

Nevertheless, if there was no special finding on some of this alleged evidence which the court considered sufficient to justify a reversal without a new trial, there was necessarily a general finding for the defendant. In the face of this general finding the evidence necessarily favors the defendant and there is absolutely no reason that I can see why the witnesses of the complainant were to be preferred or were necessarily to be believed. Where there was a conflict the court evidently believed the witnesses for the defendant. Some of the witnesses, therefore, of the complainant, whose testimony was not believed by the court, are to be discredited in other regards. Whether this applies to the full in regard to the testimony of the mother and the child, nominal and real complainants in this case, is of little importance. I have read this testimony and in view of the findings of the court I am unimpressed by it. I maintain that it ought to be difficult, if not practically impossible, to reverse a case on the testimony where judges of the reviewing court differ as to the veracity of witnesses. Then, in the absence of partiality, passion or prejudice, or gross error, the findings of the court below fix the facts for the court of appeals. A trier of cases, like a judge or jury, is not bound to believe even uncontradicted testimony. See Annotation 8 A. L. R. 796 *et seq.*

It is quite possible that the trial court did not believe any of the testimony that supports the theories on which this case was reversed. For example, the court may have

utterly disbelieved the statements of the witnesses of the complainant that tended to show that this child was frequently given remnants of ice cream, if at all. I say "if at all" because the imagination of a, witness could multiply cases. It is evident that even if some of the employees, supposing them to be perfectly authorized to do so, on isolated occasions gave the complainant child refreshments, if these occasions were not continuous or frequent, there was necessarily no reason to expect the child to be on the premises at any moment as the majority opinion finds. The mere occasional presence of children on a man's property is not sufficient to imply knowledge on the part of the owner of a probable attraction to children. Moreover, seeing that the court distinctly found that the child's presence was prohibited there and that this child and other children were repeatedly warned to leave the premises, while such warning might not be enough in certain cases it would at least require of a reviewing court to satisfy itself that the visits of these children were not occasional but frequent. The facts should have clearly appeared that the children might be expected at any moment. To reverse the judgment this court should point out, it seems to me, why the judge below should have believed the testimony of the complainants. Certainly, if what these witnesses said was not true, the right of a complainant with a good cause of action to recover cannot affect this case.

The salient fact that stands out from the findings of the court and the record is that the complainant child was a trespasser. Of course, if the attractive nuisance theory applies, I am agreed that the child was not a trespasser, but I am quite satisfied that the attractive nuisance not only was not pleaded or raised, but is totally inapplicable to any of the facts of this case. The majority opinion is more or less disposed to admit that outside of the attractive nuisance theory the plaintiff could only have recovered by reason of

some supervening duty of the owner of the premises to guard against trespassers whose presence might reasonably be expected. Under certain circumstances even very young children may be trespassers. A very young child that climbs into an open window is a trespasser whose presence the owner ordinarily is in no way obliged to anticipate. Necessarily, if a man has a low window and a dangerous machine in his possession to which children have come with sufficient frequency to put him on notice, common humanity and the law, as I conceive it, imposes upon him a duty to protect. However, all manner of things in a house, like stoves, sewing machines, various electrical appliances, including fans, would be dangerous to a young child. The best opinion that I find with regard to the proposition is that for children sufficiently young or not of high intelligence there is no possibility of charging them with contributory negligence. *Riggle* v. *Lens,* 71 Ore. 126, 127; 131 Ann. Cases 1916 C, 1083; L. R. A. 1915 A, 150, approving the judgment of Judge Jeremiah Smith of Mass. Contributory negligence, as the term is used, presupposes negligence by the defendant, so that as the authorities show, in order that there may be a recovery by a very young child the duty to protect must first be shown. In other words, the authorities make it clear that a young child cannot be held to be responsible for its trespasses. Nevertheless, its mere irresponsibility imposes no duty on the owner of premises unless the duty otherwise existed. *Savannah, Florida & Western R. R. Co.* v. *Beavers,* 54 L. R. A. 314, 113 Ga. 398, 29 Cyc. 446, note 42. I am now speaking of cases where there is no possibility of the application of the attractive nuisance theory. Nor am I considering the very limited class of cases where a supervening duty arises to protect against trespassers. The proposition on which I am insisting is that the fact that a child of certain years can not be guilty of contributory negligence imposes no duty on the owner of premises. The opinion of

the court below found that this child was guilty of contributory negligence. I do not see that this holding formed any essential part of the opinion, and erroneous reasoning is no ground for reversal. 4 C. J. 662.

I am willing to go as far as anybody else in restricting owners of dangerous machinery from the employment of children. *Rivera* v. *Ribas et al.,* 31 P. R. R. 341. Some sympathy, therefore, I might have had with the theory of complainant's case as presented, that he was an employee of the owner. Under the state of the law as laid down by the precedents there might be some doubt as to whether an employee, adult or child, would have even as much of a right as a trespasser or licensee. In other words, bad as it may be to employ a child where dangerous machinery is used, nevertheless an employee under the state of the law takes certain risks. The majority opinion—nominally, at least—concedes that the complainant was not employed by the owner of the premises, but some remarks made in the latter part of the opinion leave me in doubt as to whether the majority opinion did not regard this boy as a quasi-employee. If, as the findings of the court below show, he was not an employee, I must consider that this quasi-employment forms no real part of this case. In all and in any event the court found that it was not dangerous for anybody to walk by this machine. I have failed to discover anything in the evidence, except the fact that the boy was actually caught by the machine, that would establish that the machinery was imperfectly protected. Before the doctrine of *res ipsa loquitur* applies, I have an idea that it is universally the law that a complainant, to recover, must show that he was in a place where he had a right to be. From a reading of the record I am thoroughly convinced that this accident could not have happened if this boy had kept his feet on the ground and had not, for his own independent purposes, climbed to a nearer proximity with the dangerous machinery. Al-

though I am very strongly of the opinion that neither the pleadings nor the record justify the theories on which this case was reversed, as three judges have given the stamp of their approval to the reversal I shall attempt to examine the state of the law and the facts in these regards.

If the issues as presented were alone to be considered, the appellee, in my opinion, unnecessarily in its brief forestalled the possibility that there might be an application of the attractive nuisance theory and proceeded to give some reasons why that theory could not be applied. One of them was that the child did not find himself at the spot where he was by reason of any attractive machinery. This is borne out by the complainant child's own testimony. He said that he heard a noise and went to discover what the noise was. If his statement was true, which I doubt, and I think this court doubts, he was solely attracted by the noise. Then, if he had kept his feet on the ground he would not have been injured. I find no case that holds that where a man has machinery on his premises, even perfectly open and unprotected, but useful and necessary to his business, he owes a duty to protect against children who are not attracted to the spot by reason of the machinery, but come there for some other purpose. To the contrary see *Briscoe v. Henderson Lighting & Power Co.*, 19 L. R. A. (N. S.) 1116. The boy's testimony would show that he did not go there by reason of the attractive machinery, if his testimony is to be credited. Of course, if his testimony is not to be credited in this regard, then very little value can be put on anything that he says. The majority opinion apparently believes, despite what the boy says, that he went there by reason of the attractive situation. Even then I maintain that he did not go there for the purpose of play, as is, if I am not mistaken, the universal object in the attractive nuisance cases. He went there to obtain something for himself. In Massachusetts a little girl entered a shop holding

on to her father's hand while he made some purchases. She let go his hand to buy some refreshments. Near to this spot there was a coffee grinder in operation and to obtain some of the whole kernels she thrust her hand into the machine and lost her fingers. The court, through Judge Oliver Wendell Holmes, now of the Supreme Court of the United States, said: "Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property holders bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen." *Holbrook* v. *Aldrich*, 168 Mass. 15. Perhaps some of the courts might hold that as the child was originally an invitee, as are all persons who go into a shop to buy, the coffee grinder was an attractive nuisance and hence the owner ought to have protected against it. In other words, where an attractive nuisance exists a duty to protect arises. In the case at bar the child was in no sense an invitee. As Judge Holmes points out, he was, under the supposed theory, merely tempted. In *Erie R. R.* v. *Hilt*, 247 U. S. 97, the plaintiff was a boy less than seven years of age and had been playing marbles near the siding when a marble rolled under a car. The boy tried to reach the marble with his foot and while he was doing so the car was backed and his leg was injured. The court held, through Mr. Justice Holmes, that the child was not moved by the temptation offered by the cars, but by the wish to recover his marble, as in the case of *Holbrook* v. *Aldrich, supra.*

The attractive nuisance theory or the turntable cases are almost universally, if not universally, based upon the tendency of children to play with anything or everything which comes under their ken. Now, as I understand these cases—and a number of them with their applications are cited in 19 L. R. A. (N. S.), page 1094 *et seq.*—the child or children

must either have been directly invited or have been induced to go on the premises by something that is attractive and ought to have been protected. In the turntable cases, as typical where children are liable to play with such movable object, the railroad company must not only close the turntable but lock it. The railroad company in this case is bound to foresee that a child will take out an ordinary coupler and proceed to play with the revolving disk. Most of the cases in which the doctrine is involved are founded upon the attractiveness of premises adjacent to the highway, where the attraction of the object will tempt the children. I find no case that makes it a duty of the owner to protect against dangerous machinery in a remote part of his premises until the actual presence of children and a liability on their part to be injured are in some way drawn to his attention. The Porto Rico Drug Company warned children off its premises; it took measures to protect the machinery itself. But there is nothing that I find in the case that shows that any of these measures were taken because the owner feared that the machinery might be attractive to children.

One or two entries by children need not alone imply an invitation. *Wilmot* v. *McP.adden, Jr., et al.*, 19 L. R. A. (N. S.) 1101; *Kisteler's Adm'r* v. *Kentucky Distilleries & Warehouse Co. et al.*, 112 S. W. 913; *McDermott* v. *Burke*, 256 Ill. 401; *Fitzpatrick* v. *Penfield*, 109 Atl. 653. In this last-named case it was said that the owner of premises who suffered them to be used as a playground for a certain length of time might be considered to have given children an invitation to his premises, but the court held that the use of an open lot as a playground by children every day for four Sundays and possibly one or two other times was not often or continued enough to stamp the lot as a playground so as to require the owner to exercise such ordinary care as to keep it in safe condition for children. Whether I should care to go as far as the Pennsylvania court is an-

other matter, but it is perfectly clear in this case that the mere fact that some children had been warned off the premises for reasons not fully disclosed does not imply an invitation by the owner.

There is a large class of cases which involve ponds, wells and other excavations where the owner is almost universally not required to protect from children. *Savannah, Florida & Western Railway Co.* v. *Beavers,* 54 L. R. A. 314. These and many other things are too common in the lives of farmers or owners of premises to require precaution. A farmer may leave a wagon on a slight incline on his own premises without any necessity of providing against the possibility that a neighboring child may climb on the wagon, set it in motion and be injured. *George* v. *Los Angeles Railway Co.,* 126 Cal. 364; *Klaumeier* v. *City Electric R. R. Co.,* 116 Mich. 312. There are many other objects to which the cases refer or which may be imagined; live ovens, sewing machines, electric fans and appliances, and many other things which everybody uses and which are so common that the law cannot impose a responsibility on owners to protect others. The turntable cases are the opposite extreme and there are intermediate cases where the duty arises or does not arise, according to circumstances. Now, I maintain, at the risk of repetition, that any dangerous machine on the private part of one's property or business establishment falls under the class of ponds and wells until it is first shown that the children have been unduly attracted by the machinery. *Peters* v. *Bowman,* 115 Cal. 356, and others cited hereafter. The question of knowledge plays an enormous role.

I do not find any sufficient basis in the record to show that either the owners or any of the employees of the Porto Rico Drug Company knew or had occasion to know that this machinery was an attractive nuisance. *Indianapolis Water Co.* v. *Harold,* 83 N. C. 993; *National Metal Edge Box Co.*

*v. Agostini,* 258 Fed. 189; *Heller* v. *New York, N. H. & H. R. Co.,* 17 A. L. R. 823, 829. While children had been warned away and this boy had been told not to go there, there is no evidence that has been pointed out to me to show that any child had ever been attracted, as the word is used, by this ice-cutting machine. So far as knowledge plays a role, and it must be an element to make the case an exception, no such knowledge can be charged against the Porto Rico Drug Company. The fact that the presence of the child under the theory of this court might be expected there to look for ice or sawdust or leavings of refreshments or what not, does not bring the case within the doctrine of the turntable cases. The duty to protect against expected trespassers is a different matter.

With regard then to the supervening duty of an owner of property to protect against trespassers, again I find nothing in the evidence to justify the application of this theory. To take one of the principal cases cited by the majority, namely, *Felton* v. *Aubrey,* 74 Fed. 350. This is the familiar case where a railroad company, even on its right of way, had reason to expect children or even adults to be and hence was required to use ordinary care to avoid injury to them. In other words, in this case there was a public duty or a quasi-public duty. The most important part of that decision, however, as in *Walsh* v. *Pittsburgh Railways Co.,* 32 L. R. A. (N. S.) 559, and elaborate note, is again the element of knowledge and not only does the element of knowledge exist of the possible presence of children, but also the knowledge that adults or children are liable to be injured by passing trains. I find that the record does not show that anyone knew that a child, as distinct from an adult, was liable to be injured by this machinery. There is no evidence, beyond the fact of the accident itself, that in the ordinary course of events any child could or would be injured, especially if such child was merely going about the premises without

climbing. I cannot possibly see how the fact that various employees gave this child remnants of delicacies or sent it on errands gave anyone of them any reason to suspect that the child would be injured by the machinery. To require of the owner of premises, even though he knew that children might occasionally or even frequently be expected there, to protect against an accident never known to happen before, is a theory that I find nowhere in the reported cases. Some causal connection must be shown between the breach of the duty and the accident. *Willis Swartwood's Guardian et al. v. Louisville & Nashville R. R. Co.*, 19 L. R. A. (N. S.) 1112.

There is another matter to which no reference is made in the majority opinion, and that is the question of agency. Supposing that it was true that these alleged employees had reason to expect the presence of a child because they had given it delicacies and sent it on errands,—how are these acts to be charged against the owners without first showing that the particular acts were within the scope of the duties of such employees? The record does not disclose, and I fancy it would be impossible to establish, that these acts were authorized or even supported by the owner or owners of the Porto Rico Drug Company or of any of its managers or superintendents. The act must be reasonably within the scope of the employee's duty. *Sweeden* v. *Atkinson Improvements Co.*, 27 L. R. A. (N. S.) 124; *Davis* v. *Ohio Valley Banking & Trust Co.*, 15 L. R. A. (N. S.) 402.

The majority opinion says that these premises became in fact a baited trap for the child in this case. It seems a sufficient answer to any theory of a "baited trap" that before the owner should be held responsible for such alleged baited trap it should appear that he knew or had reason to know that it was a baited trap. A baited trap implies malice or such negligence that would shock the sense of justice in leaving it unguarded. If there was such a baited trap I do not believe it would have escaped the vigilance of a trial

judge. More than this, however, I maintain that when a complainant intends to recover on the theory of a baited trap, his complaint should disclose, or the evidence should justify, that he was proceeding on that theory; that he fully advised the defendant before the close of the trial that a baited trap was the theory of his case. This brings me to the most important point of this case.

I have intimated before that the pleadings do not justify the reversal of this judgment. Judge Thompson, in his work on Negligence, denounces the courts that would call a child a trespasser where there was an attractive nuisance, and I do not think that I should disagree with him where an attractive nuisance exists. Judge Thompson, however, I·am sure, would not follow this court in its failure to observe the necessity for a sufficient allegation in the complaint. In section 7582, Supplement of his Work, he says: "The complaint in an action for injuries to a child playing around machinery must allege either that there was an actual invitation to children to play about the machinery or that it was so especially and unusually attractive to children that it constituted an implied invitation." He cites *Driscoll* v. *Clark*, 32 Mont. 172, a very interesting case and *in pari materia*. Applicable also are *Fusselman* v. *Yellowstone Valley Land & Irrigation Co.*, 163 Pac. 475; *San Antonio & Arkansas Pass. R. R. Co.* v. *Morgan*, 92 Tex. 98; 29 Cyc. 567 *et seq.*

*Lee* v. *Kirby*, 217 S. W. 194, sums up the law pretty well when it decides that it is a correct and well established principle of the law of negligence that when a plaintiff specifies in his petition the elements of negligence complained of by him he cannot recover upon any element of negligence not specified. The court, in that case, points out very wisely that one of the reasons is that a complainant should not be allowed to recover for something of which he does not complain and of which he has given the defendant no notice.

A complaint is ordinarily sufficient if it alleges negligence

in general terms, that is to say, for any ordinary case of negligence which involves no special theory like a baited trap. However, even in a case where only ordinary negligence, if the phrase may be used, is to be charged against the defendant, if the complaint goes on one theory the recovery can not be had upon another. So far as I am concerned, I am prepared to hold that a complainant has no right to attempt to recover because of the failure of the defendant to protect him as an employee or to protect him from dangerous machinery, and then attempt to recover in the appellate court on the ground that the whole set of actions of the defendant constituted a baited trap.

As I have intimated before, I find nothing in the transcript of the record to show any kind of a notice to the defendant of the theories on which the case has been prosecuted or decided in this court. I say "prosecuted in this court" because at the second hearing of this case counsel for complainant urged in part some of the facts or theories on which the judgment was reversed. The cases are numerous that before pleadings can be considered amended there must be some kind of a notice to the defendant or some action on his part which would practically estop him, and amendments are only permitted to support, not to reverse, a judgment. See the whole monographic note to *Ellinghouse* v. *Ajax Live Stock Co.*, L. R. A. 1916 D, cited in the *Valdés Case, supra*, and especially pages 843 and 861.

The judgment of this court is not responsive to the pleadings. Of course, frequently one can not tell when a judgment is rendered what the trial court theory was unless the court makes findings of fact. If the court below in this case had made findings of fact that the whole set of actions of the defendant constituted a baited trap, I should say that the judgment did not follow the complaint. Any theory of a baited trap *vel non*, whether it proceeds from the attractive nuisance theory or from a duty owed to trespassing children

if their presence is discovered, was *coram non judice.*
*Baker* v. *Shafter,* 231 S. W. 349; *Fusselman* v. *Yellowstone
Valley Land & Irrigation Co.* (Mont.) 163 Pac. 473, *supra.*

I am authorized to state that Mr. Justice Aldrey concurs
in this dissenting opinion.